FRESHFIELDS BRUCKHAUS DERINGER US LLP
Timothy P. Harkness (admitted *pro hac vice*)
Timothy.harkness@freshfields.com
Pamila Gudkov (admitted *pro hac vice*)
Mila.gudkov@freshfields.com
601 Lexington Avenue, 31st Floor
New York, NY 10022
Tel:  (212) 277-4000
Fax:  (212) 277-4001

Frank J. Polek (State Bar No. 167852)
frank@poleklaw.com
701 B Street, Suite 1110
San Diego, CA 92101
Telephone: 619-550-2455
Facsimile: 619-274-8166

Attorneys for Defendants Kinderhook
Industries II, LP; Kinderhook Industries,
LLC; and Kinderhook Capital Fund II, LP

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MONTGOMERY,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC.; KINDERHOOK INDUSTRIES II, LP; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, LP; CRESTWOOD HOLDINGS, INC.; BERGAN, L.L.C.; JOHN ELMBURG; ROBERT ELMBURG; ERIC ELMBURG; ROCKY FLICK; HOME DEPOT U.S.A., INC.; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 12-CV-3057-JLS-DHB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KINDERHOOK CAPITAL FUND II, L.P., KINDERHOOK INDUSTRIES II, L.P., AND KINDERHOOK INDUSTRIES, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**<br><br>DATE:     May 2, 2013<br>TIME:     1:30 p.m.<br>JUDGE:   Hon. Janis L. Sammartino<br>CTRM:    3B |

# TABLE OF CONTENTS

**PAGE**

Table of Authorities...................................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

FACTS...............................................................................................................4

ARGUMENT ....................................................................................................6

   I.  PLAINTIFF LACKS STANDING TO BRING COUNTS VIII AND X..........................................................................................................6

     A.  Plaintiff Lacks Standing To Bring A Fraudulent Conveyance Claim Against The Kinderhook Defendants ...............................7

     B.  Plaintiff Lacks Standing To Bring An Alter Ego Claim Against The Kinderhook Defendants .......................................................8

  II.  THE COURT LACKS PERSONAL JURISDICTION OVER THE KINDERHOOK DEFENDANTS................................................................8

     A.  The Kinderhook Defendants Lack Minimum Contacts With California To Justify Specific Jurisdiction.................................9

     B.  As Set Forth Below, The Kinderhook Defendants Are Not An Alter Ego Of Blitz And Are Not Subject To General Jurisdiction ..........10

  III. COUNTS VIII AND X FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED....................................................................11

     A.  The Complaint Fails To State An Alter Ego Claim Against The Kinderhook Defendants ......................................................11

     B.  The Complaint Fails To State A Fraudulent Conveyance Claim Against The Kinderhook Defendants ......................................15

  IV. IN THE ALTERNATIVE, THE CLAIMS AGAINST THE KINDERHOOK DEFENDANTS SHOULD BE STAYED....................17

CONCLUSION .............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
117 B.R. 789 (Bankr. S.D.N.Y. 1990) ................................................................7

*Bd. of Trs. of Mill Cabinet Pension Trust Fund for N. Cal. v. Valley Cabinet &*
*Mfg. Co.*,
877 F.2d 769 (9th Cir. 1989)..................................................................13, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................9

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995).......................................................10, 11

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) .........................................................11, 12

*CBS, Inc. v. Folks (In re Folks)*,
211 B.R. 378 (B.A.P. 9th Cir. 1997)..........................................................8

*Family Health Servs., Inc. v. Maxicare Health Plans, Inc.*,
105 B.R. 937 (Bankr. C.D. Cal. 1989)...................................................16, 17

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
No. CIV, S-05-583, 2007 WL 2384841 (E.D. Cal. Aug. 17, 2007) .................12

*Hanson v. Denckla*,
357 U.S. 235 (1958) ................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................................9

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
204 Cal. App. 3d 1351, 251 Cal. Rptr. 859 (Ct. App. 1988) ...........................12

*In re Davey Roofing, Inc.*,
167 B.R. 604 (Bankr. C.D. Cal. 1994)........................................................8

*In re Fiddler's Creek, LLC*,
   No. 9:10-bk-03846-ALP, 2010 WL 6618876 (Bankr. M.D. Fla. Sept. 15,
   2010) ............................................................................................................... 17

*Kilkenny v. Arco Marine, Inc.*,
   800 F.2d 853 (9th Cir. 1986) ........................................................................ 13

*Lindell v. Synthes, USA*,
   No. 1:11-CV-2053, 2012 WL 1657197 (E.D. Cal. May 10, 2012) ................. 17

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) ....................................................................... 17

*Mid-Century Ins. Co. v. Gardner*,
   9 Cal. App. 4th 1205, 11 Cal. Rptr. 2d 918 (Cal. App. 1992) ...................... 11

*Moreland v. Las Vegas Metro. Police Dep't*,
   159 F.3d 365 (9th Cir. 1998) ........................................................................... 6

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir.1993) ............................................................................... 14

*Nishibun v. Prepress Solutions, Inc.*,
   111 F.3d 138 (9th Cir. 1997) .......................................................................... 15

*NuCal Foods, Inc. v. Quality Egg LLC*,
   887 F. Supp. 2d 977 (E.D. Cal. 2012) ....................................................... 4, 10

*Pavlovich v. Superior Court*,
   29 Cal. 4th 262, 58 P.3d 2 (Cal. 2002) ...................................................... 9, 10

*Palmer v. Scull*,
   No. D057556, 2012 WL 3711694 (Cal. Ct. App. Aug. 29, 2012) .................. 14

*Smith v. Blitz U.S.A. Inc.*,
   CIV. 11-1771, 2012 WL 5413513 (D. Minn. Nov. 6, 2012) ............................. 2

*Solidus Networks, Inc. v. Excel Innovations (In re Excel Innovations, Inc.)*,
   502 F.3d 1086 (9th Cir. 2007) ....................................................................... 16

*State v. PG&E Co. (In re Pac. Gas & Elec. Co.)*,
   281 B.R. 1 (Bankr. N.D. Cal. 2002) ............................................................ 6, 7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ......................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Sunnyside Dev. Co. v. Cambridge Display Tech. Ltd.*,
   No. C08-1780 MHP, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008) ..........14, 15

*Taylor v. Ron's Liquors, Inc.*,
   C 10-00694 SI, 2010 WL 2629582 (N.D. Cal. June 29, 2010) .........................12

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
   972 F. Supp. 1275 (C.D. Cal. 1997) ...................................................................15

*Trevino v. Merscorp, Inc.*,
   583 F. Supp. 2d 521 (D. Del. 2008) ...................................................................14

*Yagman v. Galipo*,
   No. CV 12-7908-GW(SHX), 2013 WL 141785 (C.D. Cal. Jan. 7, 2013) ............
   ...................................................................................................11, 14, 15, 16

**STATUTES**

11 U.S.C. § 362 ...........................................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .....................................................................................passim

Fed. R. Civ. P. 12(b) ...................................................................................passim

1 Fletcher Cyclopedia of the Law of Corporations § 41.28 ...................................18

Defendants Kinderhook Capital Fund II, L.P. (the "Kinderhook Fund"), Kinderhook Industries II, L.P. ("Kinderhook Industries II"), and Kinderhook Industries, LLC ("Kinderhook Industries") (collectively, the "Kinderhook Defendants") respectfully submit this Memorandum of Law in support of their motion (the "Motion") to dismiss the counts of the Plaintiff's Complaint (the "Complaint" or "Compl.") alleged against them pursuant to 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") or, in the alternative, to stay the claims pursuant to section 362(a)(1) of the United States Bankruptcy Code (the "Bankruptcy Code") and the Court's inherent power to manage its docket.  As set forth below, Plaintiff does not have standing to bring either the fraudulent conveyance claim or the alter ego claim against the Kinderhook Defendants.  Further, the Kinderhook Defendants, all Delaware companies based in New York, do not have the requisite contacts with California to justify this Court's exercise of jurisdiction over them.  Should the Court determine that standing and jurisdiction are proper, the Kinderhook Defendants move for dismissal pursuant to FRCP 12(b)(6) or, in the alternative, for the claims against them to be stayed.

### PRELIMINARY STATEMENT

The Complaint makes clear that this action has nothing to do with the Kinderhook Defendants and is instead the improper pursuit of a perceived deep pocket.

Given the motivation for naming the Kinderhook Defendants to this action, it should come as no surprise that the Complaint contains only conclusory allegations about what the Kinderhook Defendants, as opposed to Blitz, did or failed to do.  The Complaint alleges that Plaintiff's injury was caused by a gas can manufactured – not by the Kinderhook Defendants – but by Blitz, U.S.A., Inc. ("Blitz").  The Kinderhook Defendants do not design, manufacture, or sell gas cans, nor are they alleged to.  Their sole relation to this action is as a private equity company, management services provider, and investment vehicle that, as part of a group, made an indirect investment

in Blitz several years ago.  Such a relationship is insufficient to establish any basis for personal jurisdiction over the Kinderhook Defendants in this action.

Plaintiff filed a separate suit in 2011 against Blitz and its parent alleging, *inter alia*, strict liability, negligence, breach of warranty, and alter ego liability.  *See Montgomery v. Blitz U.S.A., Inc. et al*, 11-cv-999-JLS (DHB) (the "2011 Suit").  That lawsuit, and lawsuits like it, drove Blitz and its affiliates (the "Blitz Debtors") to file for bankruptcy protection in the United States Bankruptcy Court of the District of Delaware under Chapter 11 of the of the Bankruptcy Code in November 2011.  *See In re Blitz U.S.A., Inc., et al*, Case No. 11-13603 (PJW) (the "Blitz Bankruptcy").  Pursuant to the Bankruptcy Code's "automatic stay" provisions set forth in 11 U.S.C. § 362(a), all proceedings against the Blitz Debtors are stayed pending resolution of the bankruptcy, including the 2011 Suit.[1]

The rampant litigation that precipitated the Blitz Debtor's bankruptcy filing has seen the Kinderhook Defendants named in product liability suits fourteen times on the basis of specious alter ego theories of liability.  However, these efforts have been wholly unsuccessful.  The only case decided by a court thus far was dismissed, and the Kinderhook Defendants have not had a single adverse judgment against them as a result of their relation to Blitz.[2]  *See Smith v. Blitz U.S.A. Inc.*, CIV. 11-1771 (RHK/LIB), 2012 WL 5413513 (D. Minn. Nov. 6, 2012) (dismissing Kinderhook Industries for lack of personal jurisdiction).

The claims against the Kinderhook Defendants here are no more than an attempt to avoid the automatic stay placed on the 2011 Suit and make an end-run around the bankruptcy estate.  Such tactics are not proper and should not be condoned.  Not only

---

[1]     On November 9, 2011, the Blitz Debtors filed for bankruptcy protection in the United States Bankruptcy Court of the District of Delaware under Chapter 11 of the Bankruptcy Code, citing the burden of multiple product liability suits.  By operation of the "automatic stay" provisions set forth in 11 U.S.C. § 362(a), all proceedings against the Blitz Debtors have been stayed.  *See Montgomery v. Blitz U.S.A., Inc. et al*, 11cv999 JLS (DHB), Docket No. 35.
[2]     In nine of these cases, plaintiff(s) either dismissed the Kinderhook Defendants voluntarily or abandoned efforts to add them.  The remaining three cases are stayed pending the resolution of the Blitz Bankruptcy proceedings.

does Plaintiff lack standing to bring these claims – which belong in the bankruptcy court – but even a cursory review of the Complaint shows that the Kinderhook Defendants are not subject to personal jurisdiction in California and that Plaintiff has failed to state a claim against them.

*First*, the Kinderhook Defendants should be dismissed from this action pursuant to FRCP 12(b)(1) because Plaintiff lacks standing to bring either of the claims he alleges against them.  The claims against the Kinderhook Defendants are based on allegations that they caused harm to Blitz, and thus these claims belong to the Blitz estate and can be brought only by the debtor-in-possession.  Allowing claims against the Kinderhook Defendants to move forward in this Court would provide Plaintiff an improper advantage over Blitz's other creditors and run contrary to the fundamental objectives of bankruptcy.

*Second*, the Kinderhook Defendants should be dismissed from this action pursuant to  FRCP 12(b)(2) because this Court lacks personal jurisdiction over them.  The Complaint makes clear that the Kinderhook Defendants are nonresidents of California who had no involvement with any conduct there.  The Complaint's conclusory allegations that the Kinderhook Defendants exercised control over Blitz are not only factually inaccurate, but are insufficient to establish a basis for jurisdiction.

*Third*, the Kinderhook Defendants should be dismissed from this action pursuant to  FRCP 12(b)(6).  The Complaint fails to state an alter ego claim because California does not recognize an independent, substantive alter ego claim.  Moreover, the conclusory and threadbare alter ego allegations are not sufficient to state a claim against the Kinderhook Defendants.  The Complaint also fails to plead with the requisite particularity the claim for fraudulent conveyance.  It fails to plead the specific amount, timing, consideration, mechanism, director(s), or recipient(s) of the purported transfers, and fails to plead facts necessary to establish fraudulent intent as required by FRCP 9(b).

*Fourth*, in the event that the Court denies this Motion to Dismiss, the Kinderhook Defendants seek a stay of the claims against them pending resolution of the Blitz Bankruptcy.  Allowing the claims against the Kinderhook Defendants to go forward would inevitably have an adverse impact on the estates of the Blitz Debtors, but a stay would not prejudice Plaintiff in any way.

## FACTS

In this most recent version of his claim, Plaintiff effectively seeks to override the bankruptcy stay instituted by this Court in the 2011 Suit by filing a new Complaint, based on the same underlying allegations, adding the Kinderhook Defendants as parties.  Kinderhook Industries, a Delaware limited liability company, is a private equity firm that manages the Kinderhook Fund, an investment vehicle operating as a Delaware limited partnership.  Decl. of Louis Aurelio in Supp. of Kinderhook Industries, LLC, Kinderhook Industries II, L.P., and Kinderhook Capital Fund II L.P.'s Mot. to Dismiss ("Aurelio Decl.") at ¶¶ 2-5.[3]  Kinderhook Industries II is also a Delaware limited partnership and provides management services to the companies in which the Kinderhook Fund invests.  *Id.* at ¶¶ 6-7.

The Kinderhook Defendants are not authorized, nor have they sought authorization, to do business in California as foreign corporations.  *Id.* at ¶ 9.  They have never done business in California in connection with the events or alleged conduct at issue in the Complaint.  *Id.* at ¶ 10.  They have no offices, registered agents, directors, officers, or employees in California, nor do they own or lease property, maintain bank accounts, or maintain an address or telephone listing in the state.  *Id.* at ¶ 11.

The Complaint contains no allegations tying the Kinderhook Defendants to the design, manufacture, or sale of the plastic gas can at issue in this suit.  That is because,

---

[3]     Kinderhook submits the Aurelio Declaration in connection with the motion to dismiss based on lack of jurisdiction pursuant to FRCP 12(b)(2).  *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 986-88 (E.D. Cal. 2012) (allowing defendant to challenge personal jurisdiction by relying on affidavits and dismissing plaintiff's claim for lack of personal jurisdiction).

in fact, the Kinderhook Fund is merely an investment vehicle that indirectly owns a stake in a Blitz affiliate; Kinderhook Industries is merely a private equity company whose business is to manage investment risk through investment vehicles like the Kinderhook Fund; and Kinderhook Industries II merely provided management services to Blitz. *Id.* at ¶¶ 2-4, 5, 7-8, 13-14.  None of the Kinderhook Defendants design, manufacture, or sell plastic gas cans.  The Kinderhook Defendants and Blitz are separate and distinct entities with distinct businesses.  *Id.* at ¶¶ 2-7, 15-18.  The Blitz Debtors independently operate their businesses in separate offices from the Kinderhook Defendants without depending on the Kinderhook Defendants to pay salaries or expenses.  *Id.* ¶¶ at 15-19.

The Complaint provides no basis for personal jurisdiction over the Kinderhook Defendants.  Instead, the Complaint focuses on the Blitz Debtors, their creation, and their relationship to each other, making a series of allegations that are irrelevant to the relationship between the Kinderhook Defendants and LAM 2011 Holdings, LLC ("LAM," f/k/a Blitz Holdings, LLC), the only entity in which the Kinderhook Fund actually invested – a corporate parent three steps removed from Blitz.  The majority of the veil-piercing allegations are aimed solely at the relationship among the Blitz Debtors, and are thus irrelevant with respect to the Kinderhook Defendants.  *See* Compl. ¶¶ 136-37, 139(b-g, i, k).

The few allegations regarding the Kinderhook Defendants simply set forth a recitations of the legal standards for veil piercing and fraudulent conveyance.  *See id.* ¶¶ 139(a-g, j-k), 142-45, 150-51.  Such allegations are not only conclusory, they do not establish personal jurisdiction over the nonresident Kinderhook Defendants or suffice to state a claim against them.  Moreover, in light of the related bankruptcy proceedings and the nature of the claims, Plaintiff does not have standing to bring these claims as a matter of law.

**ARGUMENT**

Plaintiff lacks standing to bring both the alter ego claim and the fraudulent conveyance claim, which requires dismissal of the claims against the Kinderhook Defendants pursuant to FRCP 12(b)(1). The Court also lacks personal jurisdiction over the Kinderhook Defendants, which requires their dismissal pursuant to FRCP 12(b)(2). However, even if Plaintiff were found to have standing and jurisdiction, the claims against the Kinderhook Defendants should nevertheless be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs have failed to state a claim. In the alternative, the claims should be stayed pursuant to section 362(a)(1) of the Bankruptcy Code and the Court's inherent power to manage its docket.

## I. PLAINTIFF LACKS STANDING TO BRING COUNTS VIII AND X

Because the claims against the Kinderhook Defendants – that the Kinderhook Defendants are alter egos of the Blitz Debtors and that they fraudulently conveyed assets from the Blitz Debtors, depleting the estate – may only be brought by the Blitz Debtors' estate, Plaintiff lacks standing as an individual creditor outside the bankruptcy forum.[4] *See State v. PG&E Co. (In re Pac. Gas & Elec. Co.)*, 281 B.R. 1, 13-14 (Bankr. N.D. Cal. 2002). A court may not address the merits of a claim where standing is not present, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); Fed. R. Civ. P. 12(b)(1), and Plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

---

[4] In February 2013, Blitz formed a special committee of its Board of Directors charged with the responsibility of investigating potential claims by Blitz against the Kinderhook Fund and other Kinderhook entities. Thus far, no claims have been formally asserted against the Kinderhook Defendants. Moreover, Plaintiff's counsel serves as a member of the Official Unsecured Creditor's Committee in the Blitz Bankruptcy. *In re Blitz U.S.A.*, No. 11-13603(PJW), Docket No. 63 (Bankr. D. Del.). That Committee has also made a motion for standing to bring alter ego and fraudulent conveyance claims against some of the Kinderhook Defendants, which is currently pending before the bankruptcy court. *Id.*, Docket No. 1249.

## A.   Plaintiff Lacks Standing To Bring A Fraudulent Conveyance Claim Against The Kinderhook Defendants

The claim that the Kinderhook Defendants fraudulently removed assets from Blitz is one that affects all of Blitz's creditors, not solely Plaintiff, and thus the claim must be brought through the Blitz Bankruptcy.[5]   The Blitz Bankruptcy debtor-in-possession has *exclusive* standing to bring a fraudulent conveyance action concerning property of the Blitz Debtors.   *State v. PG&E Co. (In re Pac. Gas & Elec. Co.)*, 281 B.R. at 13-14; *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 800 (Bankr. S.D.N.Y. 1990) (holding that initiation of state law fraudulent transfer action violated the automatic stay because "'[i]t is axiomatic that a duly qualified trustee [or debtor-in-possession] in bankruptcy represents the estate, and is the only proper party to maintain any action under [11 U.S.C.]  § 544(b) . . . and that the creditors of the estate have no right to proceed independently in their own names,'" and sanctioning creditor because "at the time the [actions] were commenced, . . . the Defendants had actual knowledge of the pendency of the Debtor's bankruptcy case." *Id.* at 803.).

The Bankruptcy Code gives the debtor-in-possession or bankruptcy trustee "the sole standing to pursue fraudulent transfer actions" because "[a]ctions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with [the debtor's] estate and with the equitable distribution scheme dependent upon it. . . .   Any other result would produce near anarchy where the only discernable organizing principle would be first-come-first-served." *In re Pac. Gas & Elec. Co.*, 281 B.R. at 14.  Plaintiff may not jump in line ahead of other creditors to obtain assets that – if Plaintiff's allegations were correct – rightfully belong to the Blitz Debtors' bankruptcy estate.

---

[5]    The Complaint acknowledges that Plaintiff is one among many similarly situated potential creditors of Blitz.  Compl. ¶ 150-51 (alleging that the Kinderhook Defendants fraudulently conveyed assets from the Blitz Debtors in order to "defraud Plaintiff and/or other creditors of Blitz").

**B.     Plaintiff Lacks Standing to Bring An Alter Ego Claim Against The Kinderhook Defendants**

Nor does Plaintiff have standing to assert his alter ego claim, because that claim also alleges injury to the Blitz Debtors' estate and therefore belongs to the debtor-in-possession and not to an individual creditor.  *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 388 (B.A.P. 9th Cir. 1997).  The Complaint's alter ego claim turns on allegations that the Kinderhook Defendants abused the corporate form to drain and divest Blitz's corporate assets.  *See, e.g.*, Compl. ¶130 ("Kinderhook saddled Blitz with extraordinary amounts of debt"); *Id.* ¶ 138 ("Kinderhook's management of Blitz was conducted with the sole purpose of draining money from Blitz USA"); *Id.* ¶ 140 ("Kinderhook Formed Reliance Products Holdings, Inc. to fraudulently transfer monies from Blitz USA . . . knowing that Blitz was insolvent.").  Thus, it is precisely the type of claim that California reserves for the estate.  *In re Davey Roofing, Inc.*, 167 B.R. 604, 608 (Bankr. C.D. Cal. 1994) ("in the context of bankruptcy, only the Debtor or Trustee has standing to assert the alter ego claim where injury to the corporation is alleged").  The alter ego claim belongs to the estate and Blitz's "creditors are barred from bringing such claims." *Id.* at 608 (California permits corporations to pierce their own veils).

**II.     THE COURT LACKS PERSONAL JURISDICTION OVER THE KINDERHOOK DEFENDANTS**

This Court lacks personal jurisdiction over the Kinderhook Defendants, which requires their dismissal from this action.  The Kinderhook Defendants are not California companies.  They are organized under Delaware law and do business in New York.  Aurelio Decl. at ¶¶ 2-6.  They have no offices, registered agents, directors, officers, or employees in California, nor do they own or lease property, maintain bank accounts, or maintain an address or telephone listing here.  *Id.* at ¶ 11.  In light of the Kinderhook Defendants' nonresident status in California, Plaintiff bears the burden of

demonstrating that personal jurisdiction exists in this Court, *see Pavlovich v. Superior Court*, 29 Cal. 4th 262, 269, 58 P.3d 2, 7 (Cal. 2002), and has failed to do so.

## A.   The Kinderhook Defendants Lack Minimum Contacts With California To Justify Specific Jurisdiction

This Court does not have jurisdiction over the Kinderhook Defendants under established California and United States Supreme Court precedent because the Kinderhook Defendants have not "purposefully availed" themselves of the privilege of doing business in California as required by the California long-arm statute.[6]  *See* Aurelio Decl. at ¶¶ 9-11.  Furthermore, as a private equity company, an investment vehicle, and a management services provider, none of the Kinderhook Defendants' business relates to the Complaint's underlying allegations, which concern the design, manufacture, and sale of gas cans.  *Id.* at ¶¶ 2-7.

The Kinderhook Defendants lack the minimum contacts with California that due process requires "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal citation omitted).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Jurisdiction is proper, however, [only] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original).  The Complaint does not plead such contacts.

Nor do the facts set forth in the Complaint begin to satisfy the California Supreme Court's unequivocal requirement that conduct of the defendant giving rise to

---

[6]    The Supreme Court of California has held the reach of the California long-arm statute to be coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution. *Pavlovich,* 29 Cal. 4th at 268.

the action be purposefully directed at the forum state.  *See Pavlovich*, 29 Cal. 4th at 269.  This requirement exists precisely to protect parties like the Kinderhook Defendants – who have no connection with California – from being haled into court because of the unilateral activity of another entity – here, Blitz.  *Id.*

Accordingly, because there is no connection – nor is there alleged to be – between the Kinderhook Defendants and the Complaint's underlying allegations in this action, this Court lacks personal jurisdiction over the Kinderhook Defendants under traditional notions of fair play and substantial justice, and thus under California law. *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (dismissing suit against foreign corporation because "it is well settled that the mere presence of a subsidiary in a forum state will not suffice to establish personal jurisdiction over a nonresident parent company.").

**B.     As Set Forth Below, The Kinderhook Defendants Are Not An Alter Ego Of Blitz And Are Not Subject To General Jurisdiction**

The Complaint has set forth no basis for personal jurisdiction in California because, as Section II details below, the Complaint fails to adequately allege that the Kinderhook Defendants are alter egos of the Blitz Debtors.  *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 991-93 (E.D. Cal. 2012).  Assuming *arguendo* that jurisdiction over Blitz exists, Blitz's contacts cannot be attributed to the Kinderhook Defendants unless there is a basis for piercing the corporate veil between the companies.  *See, e.g.*, *Calvert*, 875 F. Supp. at 678 (granting defendant's 12(b)(2) motion and noting "it is well settled that the mere presence of a subsidiary in a forum state will not suffice to establish personal jurisdiction over a nonresident parent company").  And California imposes a heightened burden on plaintiffs who seek to pierce the corporate veil to justify jurisdiction, requiring that the presumption of corporate separateness "must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary."  *Id.* at 678.  Where, as here, there is no basis

for piercing the corporate veil, there is similarly no basis for personal jurisdiction over a foreign corporation. *See Id.* at 680.

## III.   COUNTS VIII AND X FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

Counts VIII and X should be dismissed because the Complaint does not "proffer enough facts to state a claim for relief that is plausible on its face." *Yagman v. Galipo*, No. CV 12-7908-GW(SHX), 2013 WL 141785 at *3 (C.D. Cal. Jan. 7, 2013), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has…not shown that the pleader is entitled to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted). Although facts alleged must be taken as true, "[c]onclusory statements . . . are not entitled to a presumption of truth." *Id.* at *4, citing *Iqbal*, 556 U.S. at 681.

### A.   The Complaint Fails To State An Alter Ego Claim Against The Kinderhook Defendants

The alter ego claim against the Kinderhook Defendants fails at the outset because, under California law, an alter ego claim "is not an independent cause of action, but merely a method of imposing liability on an underlying cause of action." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 320 n.24 (C.D. Cal. 2004). Further, the Complaint fails to meet the burden of overcoming the California courts' general presumption in favor of respecting the corporate entity. *See Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212, 11 Cal. Rptr. 2d 918, 922 (Cal. App. 1992). Because the Complaint fails to set forth substantive allegations and instead makes only conclusory assertions, the alter ego claim must be dismissed pursuant to FRCP 12(b)(6).

1

### 1. Alter Ego Is Not An Independent Cause Of Action

The alter ego claim should be dismissed because the Complaint fails to allege a substantive underlying claim on which to base the Kinderhook Defendants' purported liability. *Cambridge Elecs. Corp.*, 227 F.R.D. at 320. Alter ego liability may not be extended to the Kinderhook Defendants where, as here, the Complaint has made no substantive tort or contractual claims against the alleged alter egos. "An alter ego defendant has no separate primary liability to the plaintiff," and thus, without any underlying substantive claims, there is no alter ego claim against the Kinderhook Defendants. *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358, 251 Cal. Rptr. 859, 863 (Ct. App. 1988).

### 2. Conclusory Allegations Are Not Sufficient to State An Alter Ego Claim

In addition, the conclusory allegations in Complaint fail to meet either prong of California's alter ego test:  the Complaint has not pleaded a "unity of interest and ownership" that destroyed the separateness between Blitz and the Kinderhook Defendants, nor has it pleaded that maintaining the corporate form would "sanction a fraud or promote injustice." *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV. S-05-583 LKK/GGH, 2007 WL 2384841, at *2 (E.D. Cal. Aug. 17, 2007) (dismissing alter ego claim because plaintiff's allegations that "[parent companies] exerted control over [subsidiary's] day-do-day activities[;] the parties shared employees . . . and legal services[;] subsidiary relied on [indirect parent company's] experience and financial wherewithal[; and] subsidiary was undercapitalized" failed to satisfy first prong, and allegation that "[subsidiary] would not be able to pay a judgment if one is obtained" failed to satisfy second prong); *Taylor v. Ron's Liquors, Inc.*, C 10-00694 SI, 2010 WL 2629582, at *3 (N.D. Cal. June 29, 2010) (finding plaintiff's allegations to be "merely conclusory" and dismissing alter ego claim on a 12(b)(6) motion). "Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy

dictates that imposition of alter ego liability be approached with caution." *Cambridge Elecs. Corp.*, 227 F.R.D. at 326.

The Complaint fails to plead facts demonstrating that the Kinderhook Defendants and Blitz operated as a single entity.  California law requires an extremely high degree of control between parent and subsidiary to pierce the veil:  "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 859 (9th Cir. 1986) (internal citations and quotation omitted); *see also Calvert*, 875 F. Supp. at 679 ("[Plaintiff must show] that the parent corporations not only dictate general policies, but that they also control 'how the company will be operated on a day-to-day basis.'"); *Fru-Con Const. Corp.*, 2007 WL 2384841 at *5 (dismissing complaint where plaintiff failed to adequately allege that "a parent dictate[d] every facet of a subsidiary's business from policy to day-to-day operations" and merely alleged that parent exercised "permissible parental conduct [of] monitoring and oversight of the subsidiary" including "mak[ing] decisions regarding significant contracts and major personnel decisions").  The allegation that the Kinderhook Defendants' "management of Blitz" meant that "their separateness did not exist" (Compl. ¶ 138) states a conclusion with no supporting facts.  These allegations do not set forth the manner in which the Kinderhook Defendants exercised "total domination and control" over the Blitz Debtors, nor do they provide any evidence to support the requirement that Blitz "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the" Kinderhook Defendants.  *Kilkenny*, 800 F.2d at 859.  On the contrary, the Complaint is clear that Blitz conducted its own, independent business – namely designing, manufacturing and selling gasoline containers.  *See, e.g.*, Compl. ¶ 109.

Moreover, the Complaint fails to plead facts showing the "fraudulent intent or injustice" required for an alter ego claim.  *Bd. of Trs. of Mill Cabinet Pension Trust*

*Fund for N. Cal. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir. 1989). Instead, the Complaint provides a long list of allegations as to how the Kinderhook Defendants "disregarded corporate formalities between Blitz and other subsidiary companies." Compl. ¶ 139.  The vast majority of these conclusory allegations relate exclusively to the relationships among the Blitz Debtors and are irrelevant to the question of veil piercing for the Kinderhook Defendants.  The few allegations purporting to refer to actions by the Kinderhook Defendants – as opposed to the Blitz Debtors – simply demonstrate the normal workings of shareholders.  For instance, the allegation that the Kinderhook Defendants "set up a maze of corporations in a single minded attempt to insulate Blitz's assets from [judgment creditors]" (Compl. ¶ 131[7]), are insufficient because a "main purpose of the corporate form or a limited partnership is to limit the liability of the individuals who manage the entity." *See Palmer v. Scull*, No. D057556, 2012 WL 3711694, at *9 (Cal. Ct. App. Aug. 29, 2012).  If allegations that a company sought to limit its liability by incorporating were sufficient to pierce the corporate veil, such allegations would apply equally to defeat limitation of liability in nearly every instance of incorporation, thereby undermining the "traditional reason for a corporation." *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008).[8]

In short, "[t]he 'inability to collect [from an insolvent defendant] does not, by itself, constitute an inequitable result.'" *Bd. of Trs. of Mill Cabinet Pension Trust Fund for N. Cal.*, 877 F.2d at 774; *see also Cambridge Elec. Corp.*, 227 F.R.D. at 330-31 ("[Plaintiff's allegation] that the failure to pierce the corporate veil will force it

---

[7]     As a logical matter, the allegation that the Kinderhook Defendants restructured Blitz "primarily [to] avoid paying any lawful judgment obtained against the subsidiary manufacturer" (Compl. ¶ 142) is misleading.  As stated in the Complaint, "Kinderhook restructured the ownership of Blitz USA" immediately after acquiring the stock in 2007.  *Id.* ¶¶ 49-50.  The first (and only) suit finding liability against Blitz was not decided until 2010.  *Id.* ¶ 55.

[8]     California courts have found that the veil piercing analysis effectively the same under California and Delaware law.  *Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) ("[C]ourts in both Delaware and California examine similar factors in determining whether an individual or corporation is the alter ego of another corporation.")

to seek repayment of [subsidiary's] outstanding debts in the company's bankruptcy, with the consequence that it may not be able to recover the full extent of the monies owed . . . is not an inequitable result. . . .   California courts have *rejected* the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine." (citations omitted) (emphasis added)).

## B.   The Complaint Fails To State A Fraudulent Conveyance Claim Against The Kinderhook Defendants

The fraudulent conveyance claim fails because the Complaint fails to plead the elements – that assets were transferred from Blitz with the intent to defraud creditors – with the particularity required by FRCP 9(b).  *Sunnyside Dev. Co. v. Cambridge Display Tech. Ltd.*, No. C08-1780 MHP, 2008 WL 4450328, at *8 (N.D. Cal. Sept. 29, 2008).  "Particularity" requires the allegations to specify facts such as "times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

The Complaint fails to state in detail "what assets were transferred, how the assets were transferred, what the value of the assets was, what consideration was given for the assets, and why that consideration was insufficient," as well as *which* specific Kinderhook Defendant received or directed the transfer.  *Yagman*, 2013 WL 141785, at *12; *see also Sunnyside Dev. Co.*, 2008 WL 4450328, at *8 (dismissing claim because, in part, "plaintiff's failure to differentiate between the various CDT entities . . . means that plaintiff has failed to 'plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant'").  Nor does the Complaint allege *specific facts* demonstrating that such transfers were made with an intent to hinder, such as facts showing that the Kinderhook Defendants stood to benefit from the transfers.  *Yagman*, 2013 WL 141785, at *12; *Nishibun v. Prepress Solutions, Inc.*, 111 F.3d 138, *1 (9th Cir. 1997) (dismissing a claim that did not plead more than that "*the*

1    *transfer was made 'for the purpose of avoiding creditor'"*).  Rather, the threadbare

2    facts set forth in the Complaint are "[n]eutral facts necessary to identify the

3    transaction" and are "insufficient to meet the particularity requirement of Rule 9(b)."

4    *Nishibun*, 111 F.3d at *1.

5        The Complaint alleges that in 2011, Blitz transferred "millions of dollars" from

6    Blitz to Blitz Acquisitions Holdings, allowing Blitz Acquisitions Holdings to acquire

7    Reliance, with an intent to defraud creditors such as the Plaintiff.  Compl. ¶ 136.

8    Plaintiff further alleges that Kinderhook Industries II received "hundreds of thousands

9    of dollars" in management fees from Blitz that were "disproportional to the amount

10   paid to the on-site managers of Blitz USA."  *Id.* ¶ 133.  But these allegations do not

11   satisfy FRCP 9(b)'s heightened pleading standard because the Complaint fails to allege

12   specific details about the assets transferred, their value, or consideration.  *See Yagman*,

13   2013 WL 141785, at *12 (C.D. Cal. Jan. 7, 2013); *see also Nishibun*, 111 F.3d at *1.

14   Nor does the Complaint allege which specific Kinderhook Defendant purportedly

15   directed these transfers, *Sunnyside Dev. Co.*, 2008 WL 4450328 at *8, alleging only

16   that "Kinderhook engaged in" the transaction and that "*Blitz paid* . . . management

17   fees" to "Kinderhook" and "*Blitz transferred* [money] to Blitz Acquisitions Holdings."

18   Compl. ¶¶ 132, 133, 136.

19       Similarly, the Complaint does not plead the facts required to demonstrate

20   fraudulent intent.  *Yagman*, 2013 WL 141785, at *12.  As for the Reliance transaction,

21   the Complaint implicitly acknowledges that the Kinderhook Defendants did not gain

22   directly from the transaction:  the Kinderhook Defendants have no ownership interest

23   in Blitz Acquisitions Holdings – only a partial ownership interest in its parent

24   company, LAM Holdings.  Compl. ¶¶ 129, 136; *Yagman*, 2013 WL 141785, at *12.

25   And although the Complaint asserts that the management fees were "grossly

26   disproportional" to the amount paid to the "on-site managers of Blitz," it does *not*

27   allege that the management fees were disproportionate to the *value of the management*

28   *services* that the Kinderhook Defendants provided and were, therefore, fraudulent.

The Complaint's bare recitals that the Kinderhook Defendants "intend[ed] to hinder, delay or defraud Plaintiff" (Compl. ¶ 151) fall far short of the pleading requirements of FRCP 9(b).

## IV. IN THE ALTERNATIVE, THE CLAIMS AGAINST THE KINDERHOOK DEFENDANTS SHOULD BE STAYED

If the claims are not dismissed, they should be stayed pursuant to section 362(a)(1) of the Bankruptcy Code and the Court's inherent power to manage its own docket. Such a stay would promote efficiency without prejudice to Plaintiff.

Section 362(a)(1) imposes an "automatic stay" prohibiting parties from undertaking certain actions against a bankruptcy debtor and/or its property, which may be extended to third parties, such as the Kinderhook Defendants, "if unusual circumstances make the interests of the debtor and the non-debtor defendant inextricably interwoven."[9] *Solidus Networks, Inc. v. Excel Innovations (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1096 (9th Cir. 2007); *Family Health Servs., Inc. v. Maxicare Health Plans, Inc.*, 105 B.R. 937, 943-44 (Bankr. C.D. Cal. 1989) (extending automatic stay against non-debtor co-defendants where actions against the non-debtor could affect property of the debtor's bankruptcy estate) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). There is just such an identity of interest here, because allowing the suit to proceed would adversely affect the Blitz Debtors' estates. See *Family Health Servs., Inc.*, 105 B.R. at 943-44.[10]

---

[9]     The Blitz Debtors sought an extension of the automatic stay from the Delaware Bankruptcy Court at the First Day Hearing of the bankruptcy proceeding. At that time, Judge Walsh denied the request for a temporary restraining order enjoining litigation against co-defendants of the debtors, including the Kinderhook Defendants, recommending that the parties seek stays from the individual District Courts. *See In re Blitz U.S.A.*, No. 11-13603(PJW) (Bankr. D. Del.).

[10]    Moreover, the claims should be stayed because the Complaint merely seeks to "impose liability on the shareholder for the corporation's debts [and] is *not* an independent claim or cause of action." *See, e.g., In re Fiddler's Creek, LLC*, No. 9:10-bk-03846-ALP, 2010 WL 6618876, at *2 (Bankr. M.D. Fla. Sept. 15, 2010) (enforcing automatic stay as to shareholders) (emphasis in original). Courts frequently extend the automatic stay to such cases. *See id.*

1    If the Court decides not to extend the automatic stay to the Kinderhook

2 Defendants, the claims against them should nevertheless be stayed in the interests of

3 justice and judicial economy pursuant to the Court's inherent power to control its

4 docket.  See *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465

5 (9th Cir. 1983) (a "trial court may, with propriety, find it is efficient for its own docket

6 and the fairest course for the parties to enter a stay of an action before it, pending

7 resolution of independent proceedings which bear upon the case"); *Lindell v. Synthes,*

8 *USA*, No. 1:11-CV-2053 LJO-BAM, 2012 WL 1657197, at *3-4 (E.D. Cal. May 10,

9 2012) ("[T]he existence of another proceeding that may have a substantial impact on a

10 pending case is a particularly compelling reason to grant a stay . . . . [B]ankruptcy

11 represents a separate judicial proceeding – while not controlling – that will directly

12 affect the case at hand").

13    A stay in the interests of justice and judicial economy is appropriate where, as

14 here, any potential liability on the part of the Kinderhook Defendants is solely

15 contingent on a finding of liability against Blitz and the other Blitz Debtors.  Issues of

16 the Blitz Debtors' liability and damages for strict liability and negligence will need to

17 be fully adjudicated before the issue of "piercing the corporate veil" can be considered.

18 Moreover, any claims that assets were fraudulently transferred from the Blitz Debtors'

19 estate will also need to be litigated in the Blitz Bankruptcy proceedings.

20    Granting the stay would not prejudice Plaintiffs, who cannot recover against the

21 Kinderhook Defendants until there has first been a judgment of liability against the

22 Blitz Debtors.  *See* 1 Fletcher Cyclopedia of the Law of Corporations § 41.28 (updated

23 Sept. 2012) ("An attempt to pierce the corporate veil is not itself a cause of action but

24 rather is a means of imposing liability on an underlying cause of action, such as a tort

25 or breach of contract.").  By contrast, if the claims against the Kinderhook Defendants

26 are not stayed, there is a substantial possibility of duplicative or inconsistent

27 obligations or rulings that could, as a practical matter, prejudice the ability of the

28

Bankruptcy Court to protect the interests of the estates of the Blitz Debtors and, by proxy, their creditors.

### CONCLUSION

In view of the foregoing, the Kinderhook Defendants respectfully submit that, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Kinderhook Industries, LLC., Kinderhook Industries II, L.P. and Kinderhook Capital Fund II, L.P. should be dismissed from this action or, in the alternative, the claims against them should be stayed pursuant to section 362(a)(1) of the United States Bankruptcy Code and the Court's inherent power to manage its docket.

Dated:  March 25, 2013

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

s/ Timothy P. Harkness
Timothy P. Harkness
Attorney for Defendants

FRANK POLEK, ATTORNEY AT
LAW

s/ FRANK J. POLEK
Frank J. Polek
Attorney for Defendants