Patricia P. Hollenbeck (SBN 121765)
Rebecca G. Church (SBN 259652)
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201
E-mail: phollenbeck@duanemorris.com
rchurch@duanemorris.com

David E. Jones (*admitted pro hac vice*)
**LOGAN & LOWRY, LLP**
102 East Third Street
P.O. Box 452469
Grove, Oklahoma 74345
Telephone: 918 786-7511
Facsimile: 918 786-5687
E-mail: djones@loganlowry.com

Attorneys for Defendants
JOHN ELMBURG, ROBERT ELMBURG,
ERIC ELMBURG, ROCKY FLICK,
CRESTWOOD HOLDINGS, INC., and
BERGAN, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MONTGOMERY, <br><br> Plaintiff, <br><br> v. <br><br> WAL-MART STORES, INC.; KINDERHOOK INDUSTRIES II, L.P.; KINDERHOOK INDUSTRIES, L.L.C.; KINDERHOOK CAPITAL FUND II, L.P.; CRESTWOOD HOLDINGS, INC.; BERGAN, L.L.C.; JOHN ELMBURG; ROBERT ELMBURG; ERIC ELMBURG; ROCKY FLICK; HOME DEPOT U.S.A., INC.; DOES 1 through 20 inclusive, <br><br> Defendants. | Case No.: 12CV3057 JLS (DHB) <br><br> **DEFENDANTS ELMBURGS, FLICK, CRESTWOOD HOLDINGS, INC. AND BERGAN LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (12(B)(2)), LACK OF STANDING (12(B)(1)), FAILURE TO STATE A CLAIM (12(B)(6)), AND MOTION TO STRIKE (12(F))** <br><br> Date: May 29, 2013 <br> Time: 3:00 p.m. <br> Ctrm: 3B <br> Judge: Hon. Janis L. Sammartino |

DM1\3798653.2

1

## TABLE OF CONTENTS

2   I.    INTRODUCTION ............................................................................. 1

3   II.   ARGUMENT AND AUTHORITY ..................................................... 2

4        A.    This Court Lacks Personal Jurisdiction Over The Oklahoma
             Defendants.......................................................................... 2

5

6             1.    Oklahoma Defendants Did Not Purposefully Avail
                       Themselves Of The Privilege Of Conducting Activities
                       In California. ............................................................ 2

7

8             2.    The "Piercing The Corporate Veil" Claim Fails Because
                       Is Not A Separate Cause Of Action ........................... 6

9             3.    Plaintiffs Have Failed To Establish Alter Ego As A Basis
                       For Personal Jurisdiction Against The Oklahoma
10                       Defendants. ............................................................. 7

11       B.    Plaintiff Lacks Standing Against The Oklahoma Defendants
             Under *Stodd*, *Folks*, And *Ahcom*. .......................................... 9

12

13       C.    Plaintiff Lacks Standing To Assert A Fraudulent Conveyance
             Claim. ............................................................................... 12

14       D.    The Fraudulent Conveyance Claim Cannot Serve As A Basis
             For Personal Jurisdiction Against The Oklahoma Defendants .......... 12

15

16       E.    This Court Should Strike Plaintiff's Claims For Punitive
             Damages And Attorney Fees. ............................................. 12

17   III.   CONCLUSION ............................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adobe Systems Inc. v. Childers*
2011 WL 566812 (N.D. Cal. Feb. 14, 2011) ........................................4

*Ahcom, Ltd. v. Smeding*
623 F.3d 1248 (9th Cir. 2010) ............................................... 6, 9-10

*Calder v. Jones*
465 U.S. 783 (1984)........................................................4

*Calvert v. Huckins*
875 F. Supp. 674 (E.D. Cal. 1995) ...........................................7

*CBS, Inc. v. Folks (In re Folks)*
211 B.R. 378 (9th Cir. BAP 1997) .......................................... 9-10

*Mavrix Photo, Inc. v. Brand Technologies*
647 F.3d 1218 .......................................................... 2-3

*Nucal Foods, Inc. v. Quality Egg, LLC*
877 F.Supp.2d 977 (E.D. Cal. 2012) ...................................... 5-6, 8

*Pebble Beach Co. v. Caddy*
453 F.3d 1151 (9th Cir. 2006) ...............................................2

*Randhawa v. Skylux Inc.*
2009 WL 5183953 (E.D. Cal. Dec. 21, 2009).....................................4

*Rush v. Savchuk*
444 U.S. 320 (1980).........................................................3

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797 (9th Cir. 1987) ...............................................2

*Smith+Noble v. South Jersey Vinyl Inc.*
1998 WL 650079 (C.D. Cal. May 11, 1998).....................................4

*Wolf Designs, Inc. v. DHR Co.*
322 F.Supp.2d 1065 (C.D.Cal. 2004) ........................................4

ii

**California Cases**

*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*
  131 Cal.App.4th 802 (2005) ..................................................................................7

*Frances T. v. Village Green Owners Assn.*
  42 Cal.3d 490 (1986) ..............................................................................................3

*Hennessey's Tavern, Inc. v. American Air Filter Co.*
  204 Cal.App.3d 1351 (1988) ..................................................................................6

*Mihlon v. Superior Court*
  169 Cal. App. 3d 703 (1985) ..................................................................................3

*Stodd v. Goldberger*
  73 Cal. App.3d 827, 141 Cal. Rptr. 67 (1977) ............................................... 9-10

**State Statutes**

California Civil Code § 3294 ..........................................................................................12

1    Defendants JOHN ELMBURG, ROBERT ELMBURG, ERIC ELMBURG,

2 ROCKY FLICK, CRESTWOOD HOLDINGS, INC., AND BERGAN, LLC,

3 (collectively, the "Oklahoma Defendants") submit their Reply Memorandum to

4 Plaintiff's Memorandum in Opposition to the Oklahoma Defendants' Motions to

5 Dismiss for Lack of Personal Jurisdiction, Lack of Standing, Failure to State a Claim,

6 and Motions to Strike. Plaintiff's opposition is filed at ECF Docket No. 49.

7 **I.    INTRODUCTION**

8    On June 20, 2002, Michael Montgomery, a minor, suffered burns while playing

9 with fire and gasoline. However, establishing jurisdiction and stating a claim in this

10 case does not become easier even though the Plaintiff's injuries were allegedly

11 serious. Montgomery has previously alleged in a separate action[1] that the

12 manufacturer of the plastic gas can, Blitz U.S.A., Inc. ("Blitz") negligently designed

13 the gas can by failing to incorporate a safety device (a flame arrester) into the gas can.

14 Blitz is not a defendant in this action.

15    Although the Complaint contains detailed allegations regarding the injuries to

16 Montgomery, there is absolutely no tort, personal injury, products liability, or any

17 other claim stemming from Montgomery's injuries alleged against the Oklahoma

18 Defendants, or even Blitz, in this case. Indeed, the only claims asserted against the

19 Oklahoma Defendants are for piercing the corporate veil/joint enterprise and

20 fraudulent conveyance.

21    The Oklahoma Defendants are former officers, directors, shareholders and

22 affiliated entities of Blitz. For a complete description of each Oklahoma Defendant's

23 relationship to Blitz, see the factual background set forth in each Oklahoma

24 Defendant's Motion to Dismiss (ECF Doc. Nos. 29 (Robert Elmburg), 31 (Rocky

25 Flick), 40(Bergan), 41 (Crestwood), and 42 (John and Eric Elmburg)).

26
_____
[1]    *Montgomery v. Blitz U.S.A., Inc. et al*, 11cv999 JLS (DHB), ("2011
27 Montgomery Litigation"). Blitz filed bankruptcy *In re: Blitz U.S.A., Inc. et al.*, 11-
13603-PJW (Del. Bankr. Filed Nov. 6, 2011) (the "Blitz Bankruptcy"), and the 2011
28 Montgomery Litigation was stayed.

## II.     ARGUMENT AND AUTHORITY

### A.     This Court Lacks Personal Jurisdiction Over The Oklahoma Defendants.

The Ninth Circuit has adopted a three-part test for analyzing claims of personal jurisdiction:  (1) the non-resident defendant must purposefully direct his activities or purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protects of its laws; (2) the claim must be one which arises out of or relates to defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 1987).   The "purposeful availment" analysis generally applies in contract-based cases while courts apply a "purposeful direction" analysis in cases sounding in tort.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  "Purposeful direction" relies on the effects test and requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm the defendant knows is likely to be suffered in the forum state."  *Mavrix Photo, Inc. v. Brand Technologies*, 647 F.3d 1218, 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

Plaintiff concedes that the Oklahoma Defendants lack the individual contacts with California necessary to support general personal jurisdiction.  In his opposition, Plaintiff argues two bases for establishing personal jurisdiction by reason of the Oklahoma Defendants' relationship with Blitz through an alter ego and purposeful availment.

### 1.     Oklahoma Defendants Did Not Purposefully Avail Themselves Of The Privilege Of Conducting Activities In California.

In his opposition to the Oklahoma Defendants' Motions to Dismiss, Plaintiff now asserts a new theory of personal jurisdiction.   Plaintiff claims he has a personal

and direct tort cause of action[2] against former Blitz officers and directors "based on their individual knowledge that Blitz gas cans were defectively designed and their participation in placing these defective products into the stream of commerce." Memorandum in Opposition to Defendants' Motion to Dismiss ("Memorandum in Opposition") [Doc. No. 51, page 12, lns. 1-4]. Plaintiff broadly alleges that personal jurisdiction against the Oklahoma Defendants may be based on their direction, participation, or authorization of tortious acts against an individual in California. *Id.* at page 11.

Plaintiff carries the burden to establish personal jurisdiction against each Oklahoma Defendant. *Rush v. Savchuk*, 444 U.S. 320 (1980). "[I]t is well established ... that for jurisdictional purposes the acts of corporate officers and directors, in their official capacities, are acts exclusively [by] the corporation, and are thus not material for purposes of establishing minimum contacts as to individuals." *Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 713 (1985) (citations omitted) ("Implicit in this principle is the consideration that corporations are separate legal entities that cannot speak or act without their designated officers and directors."). "[A]bsent a direct showing by plaintiff that the officers of a nonresident corporation acted in other than their official capacities on behalf of the corporation in dealing with plaintiff in California, the officers may not be subjected to California jurisdiction personally." *Id.* (citing

---

[2]     Specifically, Plaintiff contends that the "Ninth Circuit recognizes personal liability on the part of the corporate officers or directors for torts in which the individual authorizes, directs, or participates." Memorandum in Opposition [Doc. No. 51, page 10, lines 23-25] (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). However, Plaintiff has not asserted any torts against the corporation in this case to hold the individual Defendants personally liable. Therefore, Plaintiff's argument is inapposite.

The Plaintiff's reliance on *Frances T. v. Village Green Owners Assn.* 42 Cal.3d 490 (1986) is likewise misplaced. In that matter a homeowners association and board of directors was sued following the rape of a homeowner, alleging liability for criminal acts of third parties. The California Supreme Court affirmed the trial court's dismissal of the homeowner's breach of contract and breach of fiduciary duty claims. It reversed and remanded only as to the claim of negligence (not alleged here) stating a homeowner's association "may" owe a duty to tenants.

DM1\3798653.2

3

**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE; CASE NO.: 12CV3057 JLS (DHB)**

1   *Shearer v. Superior Court*, 70 Cal. App .3d 424, 429-30 (Cal. App. 1977).  Each

2   individual defendant's "contacts with the forum State must be assessed individually."

3   *Calder v. Jones*, 465 U.S. 783, 790 (1984).

4       The primary case on personal jurisdiction through an individual's direction,

5   participation, or authorization of activities in a forum state is *Calder v. Jones*, 465

6   U.S. 783, 790 (1984).  In *Calder v. Jones*, 465 U.S. 783 (1984), Shirley Jones (a

7   celebrity) brought a libel suit in California against the Enquirer Magazine and two of

8   its reporters.  The defendant reporters were residents of Florida and moved to dismiss

9   for lack of jurisdiction.  The California Superior Court granted the motion to dismiss

10  for lack of jurisdiction.  The California Court of Appeals reversed, and the Enquirer

11  employees appealed to the United States Supreme Court.  The United States Supreme

12  Court held that the reporters' lack of contact with California did not insulate them

13  from suit in California.  The Court found that the Enquirer Magazine reporters were

14  not charged with "untargeted" negligence, which would have supported the dismissal

15  for lack of personal jurisdiction.  But rather, the reporters' alleged actions were

16  specifically targeted toward Jones, a California resident, and defendant reporters could

17  reasonably foresee that their targeted conduct would cause damage in California.

18      Plaintiff cannot establish the purposeful availment prong (articulated in *Calder*)

19  against the Oklahoma Defendants.  Rather, the claims Plaintiff now makes directly

20  against the Oklahoma Defendants is the equivalent of untargeted negligence.  The

21  Oklahoma Defendants are not alleged to have specifically targeted Montgomery.

22  Plaintiff apparently asserts (for the first time in its Memorandum in Opposition) that

23  the Oklahoma Defendants owed consumers of Blitz gasoline containers a duty, they

24  breached that duty, and consumers have suffered.  These allegations of untargeted

25  negligence do not rise to the level of direction, participation, or authorization aimed at

26  the forum state as required by *Calder*.[3]  These allegations will not support a finding

27  ───────────────
[3]       The other cases cited by Plaintiff are distinguishable.  In *Smith+Noble v. South

28  Jersey Vinyl Inc., 19*98 WL 650079 at *3 (C.D. Cal. May 11, 1998), the claim was for
    trademark infringement and the corporate director testified during deposition that he

1    that the Oklahoma Defendants purposely availed themselves to the benefits of

2    California.

3           This case is more similar to *Nucal Foods, Inc. v. Quality Egg, LLC*, 877

4    F.Supp.2d 977 (E.D. Cal. 2012).  In *Nucal*, Plaintiff sued a company which sold and

5    shipped contaminated eggs into California.  Plaintiff also sued the owner of the egg

6    company (a revocable living trust) and the individual settlor/trustee, along with

7    various affiliated entities.  All defendants other than the actual egg seller filed motions

8    to dismiss for lack of personal jurisdiction.  Plaintiff asserted a variety of

9    jurisdictional theories against defendants, including purposeful availment, alter ego,

10   and agency.  The *Nucal* court meticulously described the relationship between the

11   various participants in the egg operation which included a company which sold the

12   eggs, a separate company which owned the real estate upon which the chicken houses

13   were located, a third company which loaned monies for operations (generally

14   unsupported by written instruments), all of which were ultimately owned by the same

15

16   personally chose the content of the catalog and approved its use of the allegedly
     infringing material.  Thus, the defendant was alleged to have done all of the action

17   which formed the basis of the claim.  Therefore, the *Smith+Noble* defendant did much
     more than just authorize a product to be sold in the stream of commerce as Plaintiff

18   alleges against the Oklahoma Defendants.

19   In *Wolf Designs, Inc. v. DHR Co.*, 322 F.Supp.2d 1065 (C.D.Cal. 2004), the president
     of a corporation obtained trade secrets from the plaintiff, a California corporation,

20   through an oral agreement.  He then used that information to direct the sale of a
     product that he knew infringed on plaintiff's trade dress.  The defendant in *Wolf*

21   *Designs, Inc.* clearly had intimate knowledge of the plaintiff California corporation
     when he directed the sale of an infringing product.  In this case, the Oklahoma

22   Defendants are not alleged to have any specific knowledge of Montgomery.

23   In *Randhawa v. Skylux Inc.,* 2009 WL 5183953 (E.D. Cal. Dec. 21, 2009), plaintiff
     asserted a claim for misrepresentations and alleged that the CEO defendant made

24   specific misrepresentations to plaintiff.  In this case there are no allegations that any of
     the Oklahoma Defendants had actual contact with Montgomery.

25   In *Adobe Systems Inc. v. Childers*, 2011 WL 566812 (N.D. Cal. Feb. 14, 2011), the

26   president of a corporation directed the creation of a website which used confusingly
     similar logos to those of plaintiff and sold trademark infringing products.  Thus, the

27   defendant was alleged to have done all of the actions which formed the basis of the
     trademark claim.  Again in this trademark infringement case, defendant did much

28   more than just authorize a product to be sold in the stream of commerce as Plaintiff
     alleges against the Oklahoma Defendants.

individual.  The Court granted the motions to dismiss, finding that: "[t]his record before the court demonstrates that, contrary to plaintiff's contention, the various entities were not set up for purposes of stripping and transferring funds between entities to avoid liability, but rather were created for purposes of establishing an efficient business model."  *Nucal Foods, Inc.*, 877 F.Supp.2d at 994.

The *Nucal* court's analysis reveals that plaintiffs must come with something more substantive than unsupported allegations of alter ego or control.  Plaintiff Montgomery has failed to meet his burden.

## 2. The "Piercing The Corporate Veil" Claim Fails Because Is Not A Separate Cause Of Action

As discussed above, there is absolutely no tort, personal injury, products liability, or any other claim stemming from Montgomery's injuries alleged against the Oklahoma Defendants, or even Blitz, alleged in this case.  Thus, the allegation of piercing the corporate veil is nonsensical.  If the Plaintiff were to prevail and "pierce the corporate veil" there would be no substantive claim alleged against the corporate entity for which the Oklahoma Defendants could be held personally liable.

Piercing the corporate veil is a procedural process wherein courts disregard the corporate entity and hold stockholders responsible for acts done in the name of the corporation.  To allow a plaintiff to assert a stand-alone "piercing the corporate veil" or alter ego claim produces absurd results.  That is the precisely the reason the California courts and Ninth Circuit have held that piercing the corporate veil is not a separate cause of action.  *See Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358-59 ("An alter ego defendant has no separate primary liability to the plaintiff."); *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) ("there is no such thing as a substantive alter ego claim . . . .").  In this case, there are no acts of the corporation for which the individual defendants could be held liable.

/ / /

1    The Court must find that Plaintiff has failed to state a claim for "piercing the

2    corporate veil."[4]   As a result, there can be no personal jurisdiction over the Oklahoma

3    Defendants based on the Plaintiff's alter ego allegations because there is no viable

4    piercing the corporate veil claim.

5              3.       **Plaintiffs Have Failed To Establish Alter Ego As A Basis For Personal Jurisdiction Against The Oklahoma Defendants.**

6    To make a prima facie showing of alter ego liability to invoke personal

7    jurisdiction against the Oklahoma Defendants, Plaintiff must offer evidence sufficient

8    to establish that (1) the Oklahoma Defendants controlled Blitz to such a degree as to

9    render Blitz the mere instrumentality of the Oklahoma Defendants, and (2) there must

10   be enough evidence to support a finding that failure to look past the corporate entity

11   would sanction a fraud or promote injustice.  *Calvert v. Huckins*, 875 F. Supp. 674,

12   678 (E.D. Cal. 1995).

13            a.       **Plaintiff Failed To Establish Blitz Was The Mere Instrumentality Of The Oklahoma Defendants.**

14

15   Plaintiff claims that the Oklahoma Defendants so pervasively directed and

16   controlled Blitz that the Blitz corporate form should be disregarded and Blitz's

17   jurisdictional contacts should be attributed to the Oklahoma Defendants.  However, a

18   careful review of Plaintiff's "evidence" shows nothing more than certain Oklahoma

19   Defendants were shareholders of Blitz, Blitz had been sued before, the shareholders

20   understood the claims asserted against Blitz, and Blitz did not incorporate a flame

21   arrestor into its product.

22

---

23   [4]      Although the complaint merely adds the words "Joint Enterprise Liability" to
the title of the piercing the corporate veil cause of action and does not identify any

24   specific factual allegations which relate to joint enterprise liability, Plaintiff
apparently contends that he has asserted a separate claim.  Regardless, the "joint

25   enterprise liability" allegations suffer the same fate as the alter ego claim.  Joint
enterprise liability allows plaintiff to hold one member of the joint enterprise liable for

26   the torts of another member.  *See Berg & Berg Enterprises, LLC v. Sherwood
Partners, Inc.* (2005) 131 Cal.App.4th 802, 823. However, there are no independent

27   torts alleged here.  Moreover, the alleged conspiracy itself is not an independent cause
of action.  *Berg & Berg Enterprises, LLC*, 131 Cal.App.4th at 823.

28

These allegations fall woefully short of establishing that Blitz was a mere instrumentality of the Oklahoma Defendants or that the Oklahoma Defendants pervasively controlled Blitz.  In fact, Plaintiff failed to demonstrate even the most fundamental elements of participation and control, such as:  (a) identity of the Blitz board members during the relevant time, (b) identity of the Blitz officers during the relevant time, (c) the management structure, (d) how Blitz decisions were made, (e) commonality of board members amongst the Oklahoma Defendant entities, (f) identity of the person(s) who designed the subject gasoline container, (g) identity of the person(s) who designed components of the gasoline container, and (h) identity of the persons who drafted the embossed warnings language appearing on the container.

Plaintiff claims that Oklahoma Defendants concede that Blitz disregarded corporate formalities and that the Blitz corporate identity no longer existed because such conclusory allegations were made in the Complaint (Compl. ¶¶ 122 and 123) and not expressly refuted in Defendants' declarations.  Courts should not consider mere conclusory claims, or legal conclusions in the complaint as establishing jurisdiction. *Nucal*, 337 F.Supp.2d at 988.  That notwithstanding, attached hereto as Exhibit A is a Supplemental Declaration of Robert Elmburg establishing that Blitz followed corporate formalities and maintained a separate corporate identity.

**b.    Plaintiffs Produced No Evidence That Disregarding The Blitz Corporate Entity Was Necessary To Prevent A Fraud Or Injustice.**

Plaintiff also failed to make a prima facie showing that a fraud or injustice will result unless this court disregards the Blitz corporate entity.  Throughout his response, Plaintiff implies that he is without recovery because Blitz is in bankruptcy.  However, Blitz purchased liability insurance for product liability claims, and there remains over $25,000,000 in coverage available for the 01-02 policy year.  Further, Montgomery is believed to be the only claimant in such policy year.  Montgomery has filed a Motion for Relief from the Automatic Stay in the Blitz Bankruptcy [Exhibit B hereto] and, if

granted, he can pursue such remedy.  Clearly, if Plaintiff can establish his product liability claims against Blitz, there are monies available to pay his damages.

**B.    Plaintiff Lacks Standing Against The Oklahoma Defendants Under *Stodd*, *Folks*, And *Ahcom*.**

Blitz is currently in bankruptcy.  Plaintiff asserts that the Oklahoma Defendants participated in a scheme to "get the assets out (of Blitz) before the liabilities go up." Specifically, Plaintiff asserts the following business activities evidence the Oklahoma Defendants' scheme to get the assets before the liabilities go up:  (a) formation of Crestwood Holdings and October 2005 transfer of Blitz stock to Crestwood Holdings; (b) the 2006 spinoff of Blitz' pet products into a sister entity, Bergan, LLC; and (c) the sale of Blitz stock to an unrelated third party in 2007.  Clearly, however, the transfer of Blitz stock to Crestwood Holdings had NO impact on Blitz's assets.  Likewise, the 2007 sale of Blitz stock had NO impact on Blitz's assets.  Further, the spinoff of Bergan was not motivated by a desire to reduce Blitz assets.  Eric Elmburg previously testified that the pet division was separated from Blitz because the pet division did not manufacture its own products.  Instead, it outsourced all manufacturing activities for its pet products, and there was a separate business model to pursue for pet products. (Eric Elmburg Dep. Tr. at 24:10-18).

Additionally, Plaintiffs misled this court into thinking "equity reduction" was a business strategy conceived and adopted by the Oklahoma Defendants.  Review of the Flick deposition transcript reveals otherwise.  Instead, Blitz held routine sessions with outside business consultants and invited Blitz employees to participate in brainstorming sessions.  During one of these brainstorming sessions, litigation was identified as a threat to Blitz and various means to address such threats were batted around.  All concepts mentioned were captured and placed on slides.  (Rocky Flick Dep. Tr. at 100:24-116:12), but such concepts were never adopted as business strategies and incorporated by the Oklahoma Defendants.  Plaintiff conveniently leaves out pages 101-112 of the Flick deposition transcript from their exhibits which

9

describe this process.  Plaintiff presents no evidence that Blitz ever adopted an "equity reduction" strategy or took steps to "get the assets out before the liability goes up."

Assuming, arguendo, that Plaintiff has established a prima facie case that the Oklahoma Defendants adopted a business strategy to "get the assets out before the liability goes up," such claim belongs exclusively to the Blitz bankruptcy trustee.  In *Ahcom, Ltd. v. Smedling*, 623 F.3d 1248 (9th Cir. 2010), a corporation filed bankruptcy and a creditor sued the corporation's shareholders, individually.  The shareholders moved to dismiss the claim, asserting that the creditor lacked standing and claiming that the bankruptcy trustee had exclusive standing to bring the claim. The *Ahcom* court carefully reviewed two previous opinions which analyzed the standing question under California law.[5]  *Ahcom* concluded that if the alleged wrongful conduct injured the corporation, the trustee was the proper party to bring the suit.  Conversely, if the alleged wrongful conduct did not injure the corporation, a creditor had standing to sue the bankrupt corporation's shareholders.  In *Ahcom*, the Court found that the Plaintiff's substantive claim was a breach of contract which did not injure or damage the corporation.  Consequently, Plaintiff had standing to bring such claim to the exclusion of the bankruptcy trustee.  The *Ahcom* court held:

> These examples illustrate that *Stodd* was not, as the Smedlings maintain, creating a 'general alter ego' claim.  Instead, *Stodd* was attempting to distinguish established 'right[s] of action' that are properly brought by the trustee (fraudulent conveyance, conversion, and theft, to take the examples from the list above) from those that are not.  Under *Stodd*, the trustee can sue for the former but not for the latter.  *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010).

The claims asserted in the Complaint against the Oklahoma Defendants are exactly the type of claims *Ahcom* articulated as belonging to the bankruptcy trustee: fraudulent conveyance, conversion, and theft.  As such, the bankruptcy trustee has exclusive standing to bring such claims.

---

[5]   The *Ahcom* court reviewed *Stodd v. Goldberger*, 73 Cal. App.3d 827, 141 Cal. Rptr. 67 (1977) and *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378 (9th Cir. BAP 1997).

DM1\3798653.2

10

DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE; CASE NO.: 12CV3057 JLS (DHB)

In the Blitz Bankruptcy, the Unsecured Creditors Committee seeks to pursue claims against the current Blitz stockholders.  On February 12, 2013, the Unsecured Creditors Committee filed its Motion to Prosecute Certain Claims against various entities on behalf of the Estate of Blitz U.S.A., Inc.  A copy of such Motion is attached as Exhibit C.  In its Motion, the Blitz Unsecured Creditors Committee seeks authority to directly pursue the current Blitz stockholders and various affiliated entities for claims that the current shareholders raided Blitz of corporate assets.  The Motion reads, in part:

> 21.    Despite Blitz U.S.A.'s weakened financial condition, Kinderhook representatives nonetheless directed and orchestrated the siphoning of $14.6 million from Blitz U.S.A. through a refinancing of its debt.  Under a scheme created by Kinderhook, Blitz U.S.A. was required to undergo a refinancing of its credit facility whereby the Transferred Funds—which represented nearly all of the equity Blitz U.S.A. had built up—would be "deemed transferred" to Blitz Acquisition and then to BAH, which also owned the newly-created RPH.

> * * *

> 34.    Instead, Kinderhook simply sent an invoice each quarter to Blitz U.S.A. and directed Blitz U.S.A. to issue a $125,000 payment for such fees.

> 35.    Blitz complied with the request even though it received nothing of value from Kinderhook in return for those charges.

> * * *

> 50.    If the Claims are not prosecuted—and it appears that Blitz U.S.A. is not willing to prosecute them—the creditors of Blitz U.S.A. will be deeply prejudiced and irreparably harmed because the value stripped from Blitz U.S.A. will not be recovered.

Claims that the Oklahoma Defendants "got the Blitz assets out before the liabilities went up" are virtually identical to the claims the Unsecured Creditors Committee is making against the current Blitz shareholders.  Such claims, if successful, will benefit the entire bankruptcy estate and properly belong in the Blitz Bankruptcy action.

/ / /

/ / /

**C.      Plaintiff Lacks Standing To Assert A Fraudulent Conveyance Claim.**

Plaintiff appears to acknowledge that only the trustee in bankruptcy can pursue a claim under the Uniform Fraudulent Transfer Act unless the creditor "receives permission from the bankruptcy court, or where the bankruptcy trustee has abandoned or assigned the claim." Memorandum in Opposition at 21:22-26. The Blitz Bankruptcy trustee has neither abandoned nor assigned any claim against the Oklahoma Defendants to Plaintiff. Consequently, Plaintiff has no standing to assert a fraudulent transfer claim.

**D.      The Fraudulent Conveyance Claim Cannot Serve As A Basis For Personal Jurisdiction Against The Oklahoma Defendants**

Plaintiff's fraudulent conveyance claim challenges the sale of Blitz to Kinderhook. However, every alleged action effecting the transfer of Blitz to Kinderhook took place exclusively in Oklahoma. Personal jurisdiction against the Oklahoma Defendants cannot be based on actions to transfer a company which took place exclusively in Oklahoma.

**E.      This Court Should Strike Plaintiff's Claims For Punitive Damages And Attorney Fees.**

To properly plead a claim for punitive damages, Plaintiff must allege conduct amounting to oppression, fraud, and malice with intent to cause injury. Civil Code § 3294. Plaintiffs cannot carry this burden against the Oklahoma Defendants. Plaintiff claims he has established "reckless disregard" by the Oklahoma Defendants, but Plaintiff fails to identify any conduct which would be considered reckless, because he cannot. Blitz gasoline containers complied with all standards applicable to the manufacture of portable gasoline containers; plastic portable gasoline containers, to this day, do not include flame arresters; and no current state or federal standard requires or recommends incorporation of flame arresters into portable gas containers. Plaintiff's failure to allege specifically reckless conduct is fatal to his punitive damages claim. Further, Plaintiff fails to articulate any statute which would entitle him to recover his attorney fees against the Oklahoma Defendants, if successful. The

1    punitive damages and attorney fee claims should be stricken from Plaintiff's

2    complaint.

3    **III.    CONCLUSION**

4            For the reasons set forth in its moving papers and above, Oklahoma Defendants

5    move that this Court dismiss each of Plaintiff's claims against the Oklahoma

6    Defendants, and for such other and further relief to which said defendants are entitled.

7

8    Dated: April 4, 2013                    **DUANE MORRIS** LLP

9

10                                  By:_____/s/ Patricia P. Hollenbeck_____
                                       Patricia P. Hollenbeck
11                                     Rebecca G. Church
                                       David E. Jones
12                                     Attorneys for Defendants
                                       JOHN ELMBURG, ROBERT ELMBURG,
13                                     ERIC ELMBURG, ROCKY FLICK,
                                       CRESTWOOD HOLDINGS, INC., and
14                                     BERGAN, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28